UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| YATISH JOSHI, as Personal Representative of the Estate of GEORGINA JOSHI, deceased, and YATISH AIR, LLC, | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 3:08-cv-498-JTM-CAN |
| UNITED STATES OF AMERICA, | )<br>)<br>) |
| Defendant. | ) |

## OPINION and ORDER

Before this court is the motion filed by defendant United States of America ("defendant") to dismiss the contribution/indemnification claim brought by plaintiff Yatish Air, LLC ("plaintiff"). (Def.'s Mot. to Dismiss, docket # 11.) Plaintiff has responded to the motion (Pl.'s Resp. to Def.'s Mot. to Dismiss, docket # 13), and defendant has replied. (Def.'s Reply, docket # 14.) For the reasons explained below, the motion will be granted.

## I. BACKGROUND

### A. *Factual Allegations*

Plaintiffs Yatish Joshi and Yatish Air, LLC, seek damages for losses incurred when an airplane crashed at the Bloomington, Indiana airport. (Compl., docket # 1.) The complaint raises three claims: two negligence claims seeking damages for the wrongful death of the pilot and property damages and one contribution/ indemnification claim

for the four settlements plaintiff Yatish Air, LLC, made with the passengers of the aircraft. (*Id.* at 6-10.) Defendant seeks to dismiss only the contribution/indemnification claim, which was brought by plaintiff Yatish Air only. (*Id.* ¶¶ 32-37.)

Plaintiff claims that, before and during flight, the Terre Haute automated flight service station controlled by the Federal Aviation Administration (FAA), and the FAA Indianapolis Air Traffic Control Center, did not inform the pilot that the Medium Intensity Approach Light System was not functioning at the Bloomington airport and that there were unsafe weather conditions. (*Id.* ¶¶ 12-13.) Plaintiff further claims that the FAA Indianapolis Air Traffic Control Center gave the pilot of the aircraft the radio frequency for the Terre Haute rather than the Bloomington airport. (*Id.* ¶ 13.) The Terre Haute airport did, eventually, provide the frequency for Bloomington but did not indicate to the pilot that the weather conditions were increasingly unsafe for landing. (*Id.* ¶¶ 14-15.) All communication ended after this transmission, and a few minutes afterward emergency authorities responded to calls regarding an airplane crash near the Bloomington airport. (*Id.* ¶¶ 14-17.) The cloud cover reported at the time of the crash was half of the required minimum for landing. (*Id.* ¶ 18.)

Plaintiff settled the wrongful death claims brought against it by the passengers' estates. However, according to plaintiff, the FAA's "improper pre-flight briefing, failure to provide updated and accurate destination weather information, and improper approach control services were the direct and proximate cause of the crash" and therefore the cause of the deaths of the pilot and four passengers along with the loss of

2

the aircraft itself. (*Id.* ¶ 23.) Plaintiff seeks damages in the amount of $5,305,912.00. (*Id.* ¶ 37.)

   B. *The Parties' Arguments*

Defendant argues that under Indiana law, plaintiff is not eligible for either contribution or indemnification. (Def.'s Mem. Supp. Mot. to Dismiss 1, docket # 12.) Specifically, defendant claims that contribution, when claims are between joint tortfeasors, is barred under Indiana's Comparative Fault Act. (*Id.* at 4.) According to defendant, indemnity is also barred because this case does not meet any exception to Indiana's general rule barring indemnification in the absence of an express indemnification agreement. (*Id.* at 5.)

In response, plaintiff concedes defendant's point on contribution but insists that indemnity still applies. (Pl.'s Resp. to Def.'s Mot. to Dismiss 3 n.1.) Plaintiff asserts that this case does qualify for an exception to the rule requiring an express indemnification agreement because plaintiff was constructively liable[1] to the other crash victims for defendant's negligence in failing to provide the appropriate information to ensure a safe landing. (*Id.* at 6-7.) More specifically, according to plaintiff, under the dangerous instrumentality doctrine, aircraft operators are constructively liable for any injury involving their aircraft. (*Id.* at 9-11.) Plaintiff also argues that public policy considerations mandate indemnification in this case. (*Id.* at 11-14.) Defendant replies

---

[1] Constructive liability is analogous to strict liability in that it imposes liability without fault in specific circumstances. *Indianapolis Power & Light Co. v. Brad Snodgrass, Inc.*, 578 N.E.2d 669, 671 (Ind. 1991).

that plaintiff was not constructively liable to the crash victims because an aircraft is not a dangerous instrumentality and its operation does not impose a nondelegable duty on the owner, as required to satisfy an exception to the general rule barring indemnification. (Def.'s Reply 7.) Defendant insists that plaintiff has incorrectly interpreted Indiana precedent and that it is not required to indemnify plaintiff for the settlements plaintiff made with the crash victims. (*Id.* at 8-11.)

## II. LEGAL STANDARD

*A. Motion to Dismiss Standard*

A cause of action will be dismissed pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) for failure to state a claim only if no set of facts could establish a right to relief. *Brown v. Budz*, 398 F.3d 904, 908-09 (7th Cir. 2005). In other words, the court will grant a motion to dismiss when "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Phelan v. City of Chi.*, 347 F.3d 679, 681 (7th Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46). "When ruling on a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff." *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008); *see also Rujawitz v. Martin*, 561 F. 3d 685, 688 (7th Cir. 2009).

*B. Indiana's Indemnification Law*

The court must decide whether plaintiff has pleaded facts establishing that defendant may be required to indemnify plaintiff for the costs of settling with the crash victims because plaintiff was constructively liable to the victims for defendant's negligence regardless of its own negligence, triggering an exception under Indiana indemnification law. Indiana law applies to the case in its entirety under the Federal Tort Claims Act ("FTCA") because the FTCA itself directs courts to apply state law and all of the events occurred in Indiana. *Miree v. Dekalb County*, 433 U.S. 25, 29 n.4 (1977).[2] Federal courts have exclusive jurisdiction over tort claims arising under the FTCA. 28 U.S.C. § 1346 (2009).

This case involves the related concepts of indemnity and contribution. Under Indiana law, "indemnity requires reimbursement of the entire amount of liability," whereas, "contribution involves partial reimbursement of one party who has discharged or paid more than his or her share of a common liability." 6 IND. LAW ENCYCL., *Contribution* § 1 (2008). Generally, Indiana law bars contribution and indemnity claims between joint tortfeasors absent an express contractual provision for

---

[2] Plaintiff briefly mentions *Khor v. Allegheny Airlines, Inc.*, 504 F.2d 400 (7th Cir. 1974), where the Seventh Circuit applied federal law to an indemnification claim *by* the United States resulting from an aircraft collision. However, *Khor* was not governed by the FTCA because it involved a suit *by* the United States and not a suit *against* the United States. *Bowen v. United States*, 570 F.2d 1311, 1316 (7th Cir. 1978). Therefore, as *Bowen* clearly states, when a court is faced with an FTCA claim *against* the government, the statute requires that the court apply state law. *Id.*; *see Miree*, 433 U.S. at 29 n.4.

5

indemnity. *McClish v. Niagra Mach. & Tool Works*, 266 F. Supp. 987, 989 (S.D. Ind. 1967). However, Indiana courts have carved out a sole exception to this general rule for indemnity alone: "The right to indemnity may be implied at common law only in favor of one whose liability to a third person is solely derivative or constructive, and only as against one who has by his wrongful act caused such derivative or constructive liability to be imposed on the indemnitee." *Indianapolis Power & Light Co. v. Brad Snodgrass, Inc.*, 578 N.E.2d 669, 671 (Ind. 1991).

Indiana courts have further recognized only three situations where derivative or constructive liability exists, two of which do not relate to the facts of this case (respondeat superior and manufacturer/seller relationships). *McClish*, 266 F. Supp. at 989-90. In the third situation, the party seeking indemnity is "constructively liable to a third person by operation of some special statute or rule of law which imposes upon him a nondelegable duty, but who is otherwise without fault." *Id.* at 990. Thus, in order for constructive liability to be applicable, the court must find the existence of a nondelegable duty through rule or statute. *Id.*; *see also Alexander v. City of Shelbyville*, 575 N.E.2d 1058, 1061 (Ind. Ct. App. 1991). A nondelegable duty arises in five specific circumstances under Indiana law, and only one of those circumstances is implicated in this case: situations involving a dangerous instrumentality. *Perry v. NIPSCO*, 433 N.E.2d 44, 47 (Ind. Ct. App. 1982); *Selby v. NIPSCO*, 851 N.E.2d 333, 337-38 (Ind. Ct. App. 2006).

6

The parties dispute whether the application of the "dangerous instrumentality doctrine"[3] creates a nondelegable duty in this case.

The dangerous instrumentality doctrine stems from the RESTATEMENT (SECOND) OF TORTS Sections 519 and 520 (2009) ("RESTATEMENT"), and Indiana adopted and strictly applies these portions of the RESTATEMENT. *See Inland Steel v. Pequignot*, 608 N.E.2d 1378, 1385 (Ind. Ct. App. 1993); *Ebrich Prods. Co. v. Wills*, 509 N.E.2d 850, 853 (Ind. Ct. App. 1987). Section 519 of the doctrine states:

> (1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.
>
> (2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.

RESTATEMENT § 519. Section 520 of the doctrine provides factors to consider when determining whether an activity is abnormally dangerous:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes.

---

[3] Courts refer to the dangerous instrumentality doctrine by the following synonymous terms: intrinsically dangerous, inherently dangerous, abnormally dangerous, and ultra-hazardous. *See Selby*, 851 N.E.2d at 337-38.

RESTATEMENT § 520. The question of whether or not aircraft transportation is a dangerous instrumentality is "a question of law for the court to decide" rather than one of fact to be decided by a jury. *Ebrich Prods.*, 509 N.E.2d at 857.

### III. DISCUSSION

As the parties agree, Indiana courts' application of the dangerous instrumentality doctrine is the correct analysis to determine whether this court can grant plaintiff's indemnification claim. In the case at hand, defendant contends that this court should dismiss plaintiff's claim for indemnification for its settlements with the four estates of the deceased passengers because constructive liability does not exist as between the plaintiff and the crash victims. (Def.'s Mem. Supp. Mot. to Dismiss 6.) Specifically, defendant argues that any indemnity claim against it in this case is barred under Indiana law because of Indiana's conservative indemnity rule and the fact that the exception to that rule is narrowly tailored. (*Id.* at 5-6.) The court will first review Indiana's established use of the dangerous instrumentality doctrine. Then the court will address Indiana's public policies relevant to determining whether indemnification is proper in this case. Lastly the court will examine other states' application of the dangerous instrumentality doctrine in the context of aircraft and other means of transportation.

*A. Indiana's Application of the Dangerous Instrumentality Doctrine*

Indiana courts have not addressed whether an aircraft is a dangerous instrumentality.[4] However, Indiana courts have held that neither cars nor trains are dangerous instrumentalities. For example, in *Inland Steel*, *supra*, the Indiana Court of Appeals, utilizing RESTATEMENT Section 520, held that because injury could be avoided with reasonable care, transporting large, heavy amounts of steel in a tractor-trailer is not an "abnormally dangerous" activity. 608 N.E.2d at 1385 (analyzing an automobile crash between a tractor-trailer carrying steel and a motorcycle). Additionally, the Seventh Circuit stated in *dicta* in *Consolidated Rail Corp. v. Allied Corp.*, 882 F.2d 254, 257 n.3 (7th Cir. 1989), that Indiana courts would not likely hold rail transportation of toxic chemicals to constitute an abnormally dangerous activity because of their conservative approach and reluctance to expand the application of the doctrine. Furthermore, the Indiana Court of Appeals, applying Indiana law in a case involving automobiles, refused to adopt vicarious liability through the dangerous instrumentality doctrine in a suit by an injured party alleging that the owner of the defendant's rented truck should be liable for the injuries. *Frohardt v. Bassett*, 788 N.E.2d 462, 470 n.4 (Ind. Ct. App. 2003).

Indiana courts' conservative application of the dangerous instrumentality doctrine is not limited to cases involving transportation. For example, Indiana courts

---

[4] When federal courts applying Indiana law are presented with an issue not yet addressed by the state courts, "[they] are to decide the question as [they] believe the Indiana courts would decide it." *Bowen*, 570 F.2d at 1320.

have refused to consider the following activities as abnormally dangerous: manufacture and storage of chlorine gas, *Erbrich Prods. Co.*, 509 N.E.2d at 856-57 (explaining that something qualifying as dangerous does not automatically make it a dangerous instrumentality for purposes of the doctrine but imposes a higher duty of care, focusing on the level of risk and reasonable care factors); the storage of dynamite, *Bridges v. Ky. Stone, Inc.*, 425 N.E.2d 125, 127 (Ind. 1981) (relying on the factor of reasonable care); and the supply of electricity, *Hedges v. Pub. Serv. Co. of Ind.*, 396 N.E.2d 933, 937 (Ind. Ct. App. 1979) (focusing on the factors of reasonable care, location, and level of risk). Conversely, examples of activities Indiana has considered abnormally dangerous under the dangerous instrumentality doctrine include: blasting,[5] *Enos Coal Mining Co. v. Schuchart*, 188 N.E.2d 406, 410 (Ind. 1963); and housing a wild tiger in the backyard of a residential home, *Irvine v. Rare Feline Breeding Ctr., Inc.*, 685 N.E.2d 120, 124-25 (Ind. Ct. App. 1997) (considering the level of risk, utility of the activity, location, and reasonable care factors).

The court finds after applying the six factors provided in RESTATEMENT Section 520[6] that an aircraft does not qualify as a dangerous instrumentality and thus does not

---

[5] While the Indiana Court of Appeals has found blasting in certain circumstances not to qualify as an abnormally dangerous activity when a co-worker's reasonable care could have avoided the plaintiff's injury, generally speaking Indiana accepts blasting as an abnormally dangerous activity under the dangerous instrumentality doctrine. *Selby*, 851 N.E.2d at 339.

[6] The six factors as stated previously are: (1) level of risk; (2) extent of harm that would result; (3) impact of exercising reasonable care; (4) extent of public use; (5) location; and (6) whether and to what extent the danger outweighs the community's

impose a nondelegable duty, which would have triggered plaintiff's constructive liability to the crash victims, opening the door for plaintiff to seek indemnification from defendant for the costs paid by plaintiff to settle with the victims. As to the first factor, while aviation presents possible dangers, some possible dangers are present in all modes of transportation (*e.g.*, cars and trucks), and Indiana courts have not recognized those as dangerous instrumentalities. Furthermore, plaintiff mentions in its brief the number of aviation accidents and fatalities per year, 1,649 and 564 respectively; however, even if the court took judicial notice of these facts, plaintiff fails to indicate with appropriate context the existence of a high risk or inherent danger when using aircraft transportation because plaintiff neglects to state the number of total flights or aviation passengers per year. Thus, the first factor does not weigh in plaintiff's favor, but does not necessarily weigh in favor of defendant either.

Second, the likelihood that the resulting harm would be great is high; when aircraft malfunction and crashes do occur, the harm that results in those instances is likely great, weighing in favor of plaintiff. *See Estate of Knox v. Wheeler*, No. 2:05-CV-19-PRC, 2005 WL 2043787, at *10 (N.D. Ind. Aug. 25, 2005) (acknowledging possibility of greater harm resulting from accident between a tractor-trailer carrying heavy steel and an automobile, as opposed to an accident between two automobiles). Third, the extent that harm can be avoided by reasonable care weighs in favor of defendant because the

---

demand for the activity or thing. RESTATEMENT § 520.

risk of harm in most instances of travel can be avoided with reasonable care. *See Inland Steel*, 608 N.E.2d at 1385 (holding that the use of reasonable care by a truck driver hauling steel would have avoided the accident with a motorcycle because the truck driver ran a red light); *Ebrich Prods.*, 509 N.E.2d at 856-57 (explaining that while exposure to raw chlorine gas is dangerous, the dangers can be avoided with reasonable care and it is only with an unavoidable risk that the reasonable care factor would weigh in the other direction). Fourth, air travel is a widely used and common mode of transportation in the United States, weighing in favor of defendant. *See Langue v. B & P Motor Exp., Inc.*, 257 F. Supp. 319, 325 (N.D. Ind. 1966) (holding that trucks and automobiles are an "all-too-common fact of every-day life" to qualify as dangerous instrumentalities). Fifth, the activity was carried out at an appropriate location because the crash took place less than one mile from the runway, still in the vicinity of the airport, thus weighing in favor of defendant. *See Estate of Knox*, 2005 WL 2043787, at *10 (explaining that the highway is an appropriate location for trucks hauling steel coils). Lastly, the public values rapid and accessible air travel greatly in spite of possible dangers resulting from flying, such as crashes and fatalities, weighing in favor of defendant.

Though the second factor, the extent of the harm that would result, definitively weighs in favor of plaintiff and the first factor, with more information, may or may not weigh in favor of plaintiff, the court is more persuaded by the weight of the remaining factors, mainly the level of common usage by the public of flight as a mode of

12

transportation regardless of the possible dangers and the degree to which the exercise of reasonable care can minimize the dangers. Indiana courts have considered activities abnormally dangerous only where the activities were highly likely to cause great harm. *See, e.g., Enos Coal Mining Co.*, 188 N.E.2d at 410 (blasting), *Irvine*, 685 N.E.2d at 124-25 (tiger in backyard of residential home). Flying an airplane is not so inherently dangerous that the likelihood of harm resulting would be comparable to that of blasting in a residential area or housing a tiger in someone's backyard, both of which would almost certainly cause harm.

Furthermore, as Indiana courts have explained, the effect of recognizing a thing or activity as abnormally dangerous is that the resulting imposition of a nondelegable duty (essentially strict liability) discourages or even deters such future activity. *Irvine*, 685 N.E.2d at 124-25. Plaintiff has not presented an argument to support the idea that Indiana would seek to discourage flight as a mode of transportation. Accordingly, it is the opinion of this court that Indiana courts would refuse to impose a nondelegable duty on an aircraft owner to ensure a safe flight by recognizing aircraft as a dangerous instrumentality.[7]

---

[7] Again, Indiana courts do allow express indemnification agreements; however, without one, constructive or derivative liability must exist in order for the court to allow a claim for implied indemnity. *Indianapolis Power*, 578 N.E.2d at 671.

*B. Public Policy Considerations*

Plaintiff argues in passing that this court should, if nothing else, deny defendant's motion to dismiss on grounds of public policy. (Pl.'s Resp. to Def.'s Mot. to Dismiss 11-14.) While plaintiff refers to the public policy of encouraging settlements (*id.* at 13-14), it does not necessarily follow, as plaintiff suggests, that Indiana would alter its established indemnity rule or the established exceptions to that rule. Plaintiff has not persuaded this court that public policy interests in encouraging settlements should override established Indiana law limiting indemnification to specific circumstances.

Additionally, plaintiff argues that Indiana has adopted a comparative fault statute, under which damages are apportioned amongst joint tortfeasors in accordance with their degree of fault. Plaintiff further argues that under that act, a party may assert as a defense that a claimant's damages were caused by a non-party. Thus, plaintiff reasons, Indiana law favors requiring an at-fault party to indemnify an innocent party. (Pl.'s Resp. to Def.'s Mot. to Dismiss at 11-13.) However, the Indiana Supreme Court has explicitly held that Indiana's comparative fault statute does not alter the content or application of Indiana's established law on indemnification. *Indianapolis Power*, 578 N.E.2d at 672-73. Thus, the Indiana Supreme Court has effectively foreclosed any argument that the policies underlying the comparative fault statute trump Indiana indemnification law.[8]

---

[8] In any event, the comparative fault statute has no application in this case. This is not a tort action brought by the injured passengers; rather, this is an indemnification action between two alleged tortfeasors.

*C. Other States' Application of the Dangerous Instrumentality Doctrine*

Plaintiff relies somewhat heavily on *Ross v. Apple*, 240 N.E.2d 825 (Ind. Ct. App. 1968); however, plaintiff also misinterpreted and therefore misapplied the case to the current facts. The Indiana Court of Appeals in *Ross* applied Ohio law on the question of vicarious liability, not Indiana law. *Id.* at 829-30. Regardless, in *Ross*, the court imposed liability on the owner of the aircraft when the pilot/lessee improperly operated the aircraft and caused a crash, resulting in injuries to a passenger. *Id. Ross* does not discuss the dangerous instrumentality doctrine nor does it analyze the availability of indemnity for the owner of the aircraft; rather, the case involves the sole question of vicarious liability between owners and operators in aviation under Ohio law. *Id.* at 829.

Florida is the only state that has consistently held that aircraft are dangerous instrumentalities. *See, e.g., Shattuck v. Mullen*, 115 So. 2d 597, 601 (Fla. Dist. Ct. App. 1959). When using Florida cases for support, plaintiff neglects to point out that Florida also considers automobiles, motorcycles, and boats to be dangerous instrumentalities, in opposition with the settled law of Indiana. *West v. Caterpillar Tractor Co.*, 336 So. 2d 80, 85 (Fla. 1976). Regardless, Indiana explicitly refused to adopt Florida's version of the dangerous instrumentality doctrine in *Frohardt*. 788 N.E.2d at 470 n.4. Since Indiana strictly and conservatively applies the dangerous instrumentality doctrine, plaintiff's attempt to reason by analogy with cases from different jurisdictions does not convince the court that aviation involves a dangerous instrumentality warranting a finding of

15

constructive liability. Accordingly, plaintiff fails to state an indemnification claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).

IV. CONCLUSION

The court holds that plaintiff may not seek indemnification from defendant under Indiana law, and therefore, plaintiff states no indemnification claim upon which relief may be granted. In order to find for plaintiff, this court had to hold that an aircraft owner could be constructively liable for an air traffic controller's negligence through a nondelegable duty to passengers, imposed upon the owner by a rule or statute, such as the dangerous instrumentality doctrine. As explained above, this court, in accordance with Indiana law, does not recognize an aircraft as a dangerous instrumentality. Therefore, a nondelegable duty is not created under the RESTATEMENT and constructive liability is not established in order to qualify plaintiff for Indiana's exception to the general rule barring implied indemnity claims. Plaintiff has withdrawn its claim for contribution. For the foregoing reasons, defendant's motion to dismiss for failure to state a claim (docket # 11) is **GRANTED** as to plaintiff Yatish Air, LLC's claims for contribution and indemnification. Because other claims remain pending, the court does not enter final judgment at this time.

**SO ORDERED.**

**DATED:** August 6, 2009

s/ James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT